# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DORETHA BRAZIEL, individually and as
Next Friend for minors, RONESHA
BRAZIEL-minor 1, DEANA BRAZIEL-
minor 2, DaKARRI REAMER-minor 3;
KEESHA JONES, individually and as Next
Friend for minors, KENDESHA JONES-
minor-4; DaKEAESH JONES-minor 5,
TIESHA CARTHAN-minor 6, TRISTAN
CARTHAN-minor 7, and KENDRALL
BATES-minor 8; IEASHA JONES,
individually; MICHAEL D. BRIGHAM,
individually; REBECCA BRANSCUMB,
individually; STACEY BRANSCUMB,
individually; STACEY BRANSCUMB, JR.,
individually; EMMA KINNARD,
individually; individually; on behalf of
themselves and all other similarly situated
Plaintiff Residents of the City of Benton
Harbor, Michigan.

Case No.:

Hon.

         Plaintiffs,

v.

GOVERNOR GRETCHEN WHITMER,
Individually and in her official capacity;
STATE OF MICHIGAN - ENVIRONMENT,
GREAT LAKES & ENERGY; and
DIRECTOR LIESI CLARK, Individually and
in her official capacity; and DRINKING
WATER UNIT DIRECTOR ERIC OSWALD,
Individually and in his official capacity;
MICHIGAN DEPARTMENT OF HEALTH
AND HUMAN SERVICES and its
DIRECTORS ROBERT GORDON and
ELIZABETH HERTEL; in their individual
and official capacities; MAYOR MARCUS

MUHAMMAD, Individually and in his
official capacity; and MICHAEL
O'MALLEY, Individually and in his official
capacity as Water Plant Operator; and CITY
MANAGERS DARWIN WATSON and
ELLIS MITCHELL, Individually and in their
official capacities; CITY OF BENTON
HARBOR, a Municipal Corporation, through
the BENTON HARBOR WATER
DEPARTMENT; and EINHORN
ENGINEERING COMPANY; and F&V
OPERATIONS AND RESOURCE
MANAGEMENT, INC.,

    Defendants.

_____/

| | |
|---|---|
| Alice B. Jennings (P29064) | Kevin S. Hannon |
| Carl R. Edwards (P24952) | Attorney for Plaintiffs |
| **EDWARDS & JENNINGS, P.C.** | **MORGAN and MORGAN** |
| Attorneys for Plaintiffs | 1641 North Downing Street |
| 3031 West Grand Blvd., Ste. 435 | Denver, Colorado 80218 |
| Detroit, MI 48202 | (303) 861-8800, ext. 323 |
| (313) 961-5000 | khannon@hannonlaw.com |
| ajennings@edwardjennings.com | |
| cedwards@edwardsjennings.com | |

_____/

## CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, EQUITABLE RELIEF AND DAMAGES; AND JURY DEMAND

   There is not another action which arises out of the same transaction and occurrence as stated herein, which is presently pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a Judge in this court.

1.      This class action is brought on behalf of thousands of residents ("Class") of the City of Benton Harbor ("Benton Harbor"), who from at least, 2018 to the present and continuing, have experienced and will continue to experience, serious personal injury and property damage caused by Defendants' deliberate misconduct, and active decision making to not enforce the US and State of Michigan Safe Drinking Water Act by citing Defendant Benton Harbor when it did not notify or warn the public under SDWA 40 USF §141.85; failure to warn of the extreme lead toxicity of water running through its lead service pipes into their homes, schools, hospitals, workplaces and public places.  Lead, a neurotorin, is known to cause severe injury and even death[1]

2.      Defendants, except Defendant Einhorn Engineering Company, F&V Operations and Resource Management, are all State of Michigan ("State Defendants") or Benton Harbor government employees, (City of Benton Harbor Defendants), acting under the color of law, deliberately deprived Plaintiffs and the Plaintiff Class, of the rights and guarantees secured by the 14th Amendment to the United States Constitution, in that they deprived Plaintiffs of life, liberty and

---

[1] The US EPA recently noted when issuing its Emergency Administrative Order under SDWA section 1431 in Clarksburg, West Virginia that excessive led in drinking water poses an imminent and substantial endangerment. The agency pointed out,

> Health effects associated with exposure to inorganic lead and compounds include, but are not limited to: neurotoxicity, developmental delays, hypertension, impaired hearing acuity, impaired hemoglobin synthesis, and male reproductive impairment. Importantly, many of lead's health effects may occur without overt signs of toxicity. Lead has particularly significant effects in children, well before the usual term of chronic exposure can take place. (https://iris.epa.gov/static/pdfs/0277_summary.pdf - IRIS Chemical Assessment Summary for Lead).[64]

property, without due process of law because they had knowledge that there was lead in the water, beginning in 2018, that exceeded the action level under the United States Environmental Protection Agency's (EPA) Lead and Copper rule under the Safe Drinking Water Act, yet failed to notify and warn Plaintiffs that the water was and is poison and unsafe to drink, cook, wash, or bathe.  The Defendants' actions and omissions are documented[2]. Since at least 2018, the state, its agencies, Directors, the City of Benton Harbor, its Mayor, and City Managers, and Water Plant Manager treated the evidence that the water running through lead service lines in the City of Benton Harbor was poisoned with high levels of lead with deliberate indifference. Plaintiffs, many of whom are children, and the Plaintiff Class have been, and continue to be exposed, to the extreme toxicity of lead, causing an "imminent and substantial endangerment to their health. Benton Harbor is experiencing a public health emergency, an environmental justice community with over 85% African American and 5% Hispanic residents[3], he was not given the public notice and education required, under state and federal law.  The conduct of the Defendant shocked the consciousness.

---

[2] Petition for Emergency Action Under the Safe Drinking Water Act, 42 U.S.C. §300(i) and 42 U.S.C. §300(j)(7)(b) to Abate the Imminent and Substantial Endangerment to Benton Harbor Residents from Lead Contamination in Drinking Water (September 9, 2021).
[3] United States Census Bureau, *QuickFacts: Benton Harbor, Michigan,* https://www.census.gov/quickfacts/fact/table/bentonharborcitymichigan/PST045219.

4

3.      The lead exceedances in the waterlines in Benton Harbor, known by all Defendants, has created property damage to the Plaintiffs Representatives' and putative Class Members' homes, and such damage and harm continues to this present day.

4.      Not until October 14, 2021, did the Defendant Governor Whitmer announce to the residents of the City of Benton Harbor, representative Plaintiffs, and those similarly situated, that the water was unsafe to drink, cook, wash, or bathe, and/or brush one's teeth with. The medical implications of using water with lead, for at least three years and continuing, for these have not been evaluated by any of the Defendants with empirical tests, including blood lead testing or water testing of homes. During the more than three (3) year period, Defendants knew that the high lead levels exceeded the state and national lead and copper rule, and both kept this toxic lead emergency from Benton Harbor residents, and falsely assured the residents that the water was safe for all uses.

5.      The substantial personal and property injuries experienced by Plaintiffs and the Class, and the ensuing Benton Harbor citywide disaster, reaches constitutional proportions because State defendants, acting both under the color of law, in its customary decision making practice, decided to not require Benton Harbor to comply with SDWA 40 USF §141.85, on Public Notice and Education, which by not warning Benton Harbor water users, created additional risk and prolonged the

risk of serious and life threatening dangers to Plaintiffs and the Class, most specifically, children, prenatal and up to age six (6)[4].  The Plaintiffs, in this case, include a four (4) year old and a four (4) month old baby.

6.     The state and local government officials, Defendants herein, who made the decision to continue to extend the deadline for various violations to be abated or repaired, yet did not advise Benton Harbor residents, created further use of toxic water, thereby violating the constitutional rights of Plaintiffs and Plaintiff Class members and caused their bodily integrity by acting to stop using the lead laced water through ingestion in drinking, cooling and oral hygiene.

7.     Limited blood lead testing has been performed on the residents of the City of Benton Harbor, not even the children, who are most affected by the long term cognitive and developmental harm.   Defendant Governor Whitmer, under the Michigan Constitution, can exercise prospective relief.

8.     Defendants' acts and omissions shocks the conscience and shows deliberate indifference to the Plaintiff Class Representatives' and Class Members' constitutional rights, resulting in harm to their health, both physically and emotionally.

---

[4] Centers for Disease Control and Prevention, *Blood Lead Levels in Children,*
https://www.edc.gov/noeh/lead/prevention/blood-lead-levels.htm.

9.     On October 20, 2021, a City of Benton Harbor watermain, serving most of the residents of Benton Harbor, Michigan, malfunctioned, leaving residents unable to bathe, flush toilets, or wash clothes. This crisis, on top of a crisis, lasted for several days. Many residents had to move out of their homes.

10.     On October 20, 2021, at a Michigan State Legislative hearing, Director of EGLE, Defendant Leisa Clark, admitted that the Benton Harbor drinking water is not safe to drink. In response to the question posed by a State Representative, "Is it safe to drink the water in Benton Harbor right now, or not?"  Defendant Clark responded, "No, it's not. People should be drinking bottled water."

## JURISDICTION AND VENUE

11.     This is a civil action brought pursuant to 42 U.S.C. §1983, seeking injunctive and declaratory relief, together with monetary damages against Defendants for violation of the Due Process clause Fourteenth Amendment of the United States Constitution.

12.     This Court has jurisdiction pursuant to 28 U.S.C. §1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. §1343(a)(3) and (4) and 28 U.S.C. §2201, the Declaratory Judgment Act. This Court has personal jurisdiction over Defendants named herein as public officials of the State of Michigan sued in their official and individual capacities and public officials, employees of the City of Benton Harbor sued in their official and individual

capacities, and the city of Benton Harbor, for violations of Plaintiffs' constitutional rights. Similarly, the Court has jurisdiction over the Governor of the State of Michigan, in her official capacity, for prospective relief.

13.     This Court has jurisdiction under the Safe Drinking Water Act (SDWA) 42 U.S.C. §300(i) and 42, as it is a federal statute providing injunctive and equitable relief to Plaintiff Class Representatives and Class Members.

14.     Venue is proper in this Court as Defendants conduct their business in the Western District of Michigan.

## PARTIES

### A.      Plaintiff Class Representatives

15.     Plaintiff Class Representative, Doretha Braziel, has lived in the City of Benton Harbor, Michigan, her entire life. Plaintiff Braziel has lived in her present rented home since February 2021; prior to that time Plaintiff lived for over eight years in a Benton Harbor home with her mother. Plaintiff lives in her home with minor children, age 15, (minor 1); 17, (minor 2); and grandson, age four (4) months, (minor 3).

16.     Plaintiff and her minor children, and minor grandson, have utilized the tap water until late October 2021, when the publicity exposed that the water was not safe for all purposes. At no time prior to late October 2021was Plaintiff Braziel ever notified by any of the Defendants that the water she used was unsafe to drink or

utilize in food preparation and oral hygiene. Plaintiff's minor grandson, born on June 15, 2021, was fed his formula with tap water, right up until Governor Whitmer declared a state of emergency, and the "news got out".

17.     Plaintiff, in 2021, had her water tested, which showed a lead level of 886 ppb.

18.     Plaintiff Class Representative Braziel, and her minor children and grandson, have sustained physical and emotional injuries related to Defendants' actions, and customary decision making which resulted in no notice to Plaintiffs in 2018, and omissions, leaving them through present, and continuing, vulnerable to great harm.

19.     Plaintiff Representative must continue to pay for water she cannot utilize.

20.     Plaintiff Representative Braziel, and her minor children and grandson, are all African American.

21.     Plaintiff Class Representatives, Keesha Jones has lived in the City of Benton Harbor, Michigan, her entire life. Plaintiff rented her present home for over three (3) years and utilizes Benton Harbor, Michigan's water system for tap water and sanitation services. Plaintiff Jones lives with four (4) minor children, (minors 4, 5, 6 and 7); and one minor grandchild, ages four (4) to eighteen (17).

22.     Adult children have also lived in the home since 2016. Both Plaintiff and her minor children have sustained physical and emotional injuries and damages resulting from the Defendants' conduct, which are known to be caused by lead consumption. At least three (3) of Plaintiff Jones' children have Individual Education Plans because of learning difficulties and speech impairments.

23.     Plaintiff Jones states none of the Defendants advised her, prior to October 2021, that she, or her minor children, should not drink, cook, or brush their teeth with the tap water. Plaintiff and her children ingested the Defendant Benton Harbor's water until the Governor announced on October 14, 2021, that the water crisis required bottled water for ingestion due to safety reasons.

24.     Plaintiff Jones and all of her children living with her are African American.

25.     Plaintiff Representative Jones must continue to pay for water she cannot utilize.

26.     Plaintiff Class Representative Emma Kinnard is a homeowner living at the same address in Benton Harbor, Michigan, since 1976. Plaintiff Kinnard, has not fully utilized her water, for at least two years, because of the smell and cloudiness.

27.     Plaintiff Kinnard has medical conditions, requiring ongoing medication and treatments.  She states some of her conditions are related to using the water for bathing. Though Plaintiff Kinnard has not ingested the water for a couple of years,

she has made conditions  known to be connected to the lead. Emotionally, Plaintiff Kinnard states she is outraged and said that her community, which she loves, is being hurt by the water crisis in her community. As a former educator and a Benton Harbor entrepreneur, Plaintiff Kinnard is most concerned for the children, who she states will suffer in their loss of cognition, intellect and developmentally.

28.    Plaintiff Kinnard must continue to pay City Defendants for water services she cannot utilize.

29.    Plaintiff Representative Kinnard is an African American.

30.    Plaintiff Representative Michael Duane Brigham is a sixty-one (61) year old African American male. He has lived at his current address in Benton Harbor, Michigan for eleven years.

31.    Up until October 2021, he utilized the water coming from his tap for all purposes.

32.    Plaintiff Class Representative Brigham has medical conditions which are known to be connected with lead consumption in adults.

33.    Plaintiff Representative Brigham has paid for water, which has caused him harm, and for which he cannot use.

34.    On October 28, 2021, Plaintiff was administered a blood lead test and found to have lead in his blood, even though he had not ingested the water for approximately three weeks.

35.     Plaintiff Class Representatives Rebecca Branscumb and Stacey Branscumb, age forty-seven (47), and their son, Stacey Branscumb, Jr., age eighteen (18), have lived in their home for over twelve (12) years, in Benton Harbor, Michigan.

36.     Test results on the Branscumb property show a lead level of 496 pp billion in 2021.

37.     Plaintiff Class Representatives have medical conditions which are related to the ingestion of lead.

38.     Not until October 2021, did Plaintiffs Branscumb stop using their top water.

39.     Plaintiffs Branscumb's family pet, a Great Dane, died after ingesting water from the water supply in their homes when his stomach bloated and flipped.

40.     Plaintiff Class Representatives Stacey Branscumb and Rebecca Branscumb continue to pay for water to Defendant Benton Harbor water system, which they cannot utilize for their everyday needs.

41.     Plaintiff Class Representatives are citizens of the United States and at all relevant times were residents of Benton Harbor, individuals, homeowners, renters, parents and minors who, since at least 2018, were and continue to be, exposed to highly dangerous lead poisoning conditions caused by, and with deliberate indifference, prolonged by Defendants' action to engage in a coverup and

not warn the community that its drinking water supplied by Defendant City of Benton Harbor's public water system had extreme lead toxicity. Defendants, all of them, have not remediated these dangers or harms, notwithstanding their knowledge, since 2018, that the amount of lead in the water was increasing  with each testing period from 2018 to 2021. Plaintiff Class Representatives bring this action on behalf of themselves and a Class of individuals who were injured in their persons, suffering invasion of their bodily integrity, or their property, at least from 2018, because of their exposure to the toxic water containing lead, running into their homes, schools and public places, from the City's lead lined pipes.

## B.    Defendants

42.    All individual Defendants are sued in their individual and/or official capacities as indicated below.

43.    Defendant Gretchen Whitmer is the Governor of the State of Michigan and is invested with executive power pursuant to Art. V, Section 1, of the Michigan Constitution.  The Governor, is responsible for the management of state government for the health and welfare of its citizens and residents and is sued by plaintiffs and the Class in her official capacity, exclusively for prospective equitable relief to correct the harm caused and prolonged by the state government and to prevent future injury as the Benton Harbor Water System continues to deliver led poisoned water to its residents.

44.     Defendant State of Michigan operates its Department of Environmental Great Lakes Energy ("EGLE"), which is responsible for overall management of the state department responsible for the environmental safety and health of Michigan citizens and residents. The State is sued because, acting through EGLE, it made the decisions that deliberately created, increased, and prolonged the hazards, threats and dangers that arose by allowing Benton Harbor residents to continue the ingestion and use of water containing lead in excess of the state and national Lead and Copper rule.

45.     Defendant Liesi Clark currently is, and at all relevant times was, Director of EGLE, and is sued by Plaintiffs and Class Plaintiffs in her individual and official capacity, because she was aware of and participated in, the decisions and actions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by failing to notify and/or warn residents that Benton Harbor's water was highly toxic and allowed experimentation with ineffective anti-corrosive chemical methods that did not work to reduce the lead, but instead, made it worse. At no time was a corrosion study performed as required by the SDWA.

46.     Defendant Eric Oswald, individually and in his official capacity, at all times pertinent was the Director and Senior Management Executive, both during the tenure of Defendant Governor Snyder and Defendant Governor Whitmer, through present.

47.    During Director Oswald's tenure, based on custom and practice, he made decisions and actions, which have caused increased harm and damages to the residents of Benton Harbor, including but not limited to, multiple violations of the Safe Drinking Water Act ("SDWA"). At no time did he require that City Defendants perform the requirements triggered by its lead exceedances.

48.    Defendants Robert Gordon and Elizabeth Hertel, are both Directors of Michigan Department of Health and Human Services, for the relevant time period of Defendant Gordon through January 2021, and Director Hertel, from January 2021 until present and continuing. Neither Director Gordon, nor Director Hertel, have engaged the Benton Harbor community with a notice of the violations and health solutions, including alternative water source lead testing, water testing, water source and replacement of Defendant Benton Harbor's lead lines, to the residents of the City of Benton Harbor for the more than three (3) years that the Defendants, in their official capacity, knew that high levels of lead were found in Benton Harbor's service lines and resulting in substantial physical harm to the residents.

49.    The City of Benton Harbor is a municipal corporation, so authorized by the laws of the State of Michigan, which operates Department of Public Works and the Public Water System and provides water to its residents and property owners as part of its responsibilities and services. The City of Benton Harbor is liable because the municipal corporation itself, through its policymakers, deliberately created, and

with deliberate indifference, increased and prolonged the hazards, threats and dangers that arose by its failure to notify and/or warn the residents of Benton Harbor that its water was poisoned with lead and should not be used.

50.    Marcus Muhammad was, at all relevant times from 2018 to present, and continuing, Mayor of Benton Harbor. Mayor Muhammad is individually liable because, as Mayor, he approved of, and thereby participated in, the decisions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by failing to notify and/or warn the residents of Benton Harbor that the water in its lead lines continued to have high levels of lead that exceeded the state and national Lead and Copper rule.  Though he was aware of the high lead levels he did not create the notice and public education required by the state and federal law.

51.    Defendants Benton Harbor; City Managers Darwin Watson and Ellis Mitchell; have both been charged with the other City Defendants to act to abate the lead in the Benton Harbor Public Water System, but have failed to do so, causing harm to the Plaintiff Class Representatives and Class Members, in violation of their constitutional rights and in violation of the Safe Drinking Water Act.

52.    Defendant Michael O'Malley, in his official capacity and individual capacity, as Water Plant Director, City of Benton Harbor Public Water System was charged with ensuring that the water services provided to Benton Harbor customers did not jeopardize their health and safety. Defendant O'Malley took leave in 2020,

and his license was revoked in 2021 by the State.   At no time did Defendant O'Malley comply with the requirements of the SDWA and its specific notice provisions CRF 40 of §141.85.  Defendant O'Malley, among other failures, did not, from 2018 to 2020 perform a "corrosion study" as required by the SDWA.

53.     Defendant Einhorn Engineering Company, as an agent contractor for the City of Benton Harbor, was negligent in its acts and omissions related to its selection of anti-corrosive chemicals, which did not provide a solution to Defendant Benton Harbor's lead in its water lines. The use of a series of different anti-corrosive chemicals added more toxicity to the residents' water, as lead, has increased since the anti-corrosive chemicals were tried.

54.     Defendant F&V Operations and Resource Management, Inc., as agent contractor for Defendant City of Benton Harbor, were negligent in its acts and omissions related to its management of the Benton Harbor Public Water System, since 2020. Through its employees F&V has failed to act to prevent the lead in Defendant Benton Harbor's lead service lines; continuing to present, nor did F&V, as the Manager of the system, comply with the requirements of the Safe Drinking Water Act, as outlined, including but not limited to CRF 40 151.35 Public Notice.

## STATEMENT OF FACTS

55.     This litigation arises out of the Benton Harbor water lead crisis, in which nearly ten thousand (10,000) residents of Benton Harbor, many children; at

least since 2018, have been exposed through the ingestion and other uses of water

with high levels of lead that exceed the state and national Lead and Copper rule of

the SDWA.

56.    In its custom and policy of deciding when to cite a public water system

for violations, it decided not to cite the City Defendants under the SDWA 40 CFR

§141 for many of its violations.

57.    On September 9, 2021, a coalition of petitioners urgently submitted an

Emergency Petition to the United States Environmental Protection Agency (EPA):

Submitted to
United States Environmental Protection Agency

Petition for Emergency Action under the Safe Drinking Water Act, 42
U.S.C. §300i and 42 U.S.C. §300j-l(b), to Abate the Imminent and
Substantial Endangerment to Benton Harbor, Michigan Residents
from Lead Contamination in Drinking Water

Submitted on Behalf of Petitioners Benton Harbor Community Water
Council, Great Lakes Environmental Law Center, NRDC, Flint
Rising, People's Water Board Coalition, Michigan Welfare Rights
Coalition, Water You Fighting For, Safe Water Engineering, LLC,
Highland Park Human Rights Coalition, Michigan Environmental
Justice Coalition, Sierra Club Michigan Chapter, Dr. Mona Hanna-
Attisha, Clean Water Action, Ecology Center, Freshwater Future, East
Michigan Environmental Action Council, Detroit People's Platform,
Campaign for Lead Free Water, For Love of Water, Environmental
Transformation Movement of Flint[5].

---

[5] https://www.epa.gov/system/files/documents/2021-11/mi0000600_bentonharbor_insp_20211027.pdf

58.     The Petition specifically stated the rationale for the need for emergency action. Gretchen Whitmer was elected Governor of the State of Michigan in 2018 and assumed office in January 2019. At no time did Defendant Governor Whitmer, through her office or State Defendants under her leadership from January 2019 to present, perform a complete and comprehensive inspection, review and/or evaluation of the facility. At least since 2019 to present, testing performed by Defendant EGLE, the predecessor of DEQ, the water samples in Defendant Benton Harbor show violations of the Lead and Copper Rule with exceedances as 889. *Ibid.* (*Ibid.*, Petition for Emergency Action Under the Safe Drinking Water Act, 42 U.S.C. §300i and 42 U.S.C. § 300j-l(b) to Abate the Imminent and Substantial Endangerment to Benton Harbor, Michigan Residents from Lead contaminated Drinking Water.)

The Emergency Petition stated:

| Table 1 – Reported Results of Lead Tap Samples in Benton Harbor by Sampling Period[6] | | | |
|---|---|---|---|
| Sampling Period | 90th Percentile (in parts per billion) | Number of Sites Above Action Level | Range of Sample Results (in parts per billion) |
| 6/1/2018 – 9/30/2018 | 22 | 8 | 0 – 60 |
| 1/1/2019 – 6/30/2019 | 27 | 12 | 0 – 59 |
| 7/1/2019 – 12/31/2019 | 32 | 10 | 0 – 72 |

---

[6] Defendant City of Benton Harbor website, in its "Consumer Confidence Report" show in 2012, a 5 ppb, and by 2015, a 12 ppb lead increase.

| | | | |
|---|---|---|---|
| 1/1/2020 – 6/30/2020 | 26 | 9 | 0 – 440 |
| 7/1/2020 – 12/31/2020 | 24 | 11 | 0 – 240 |
| 1/1/2021 – 6/30/2021 | 24 | 11 | 0 - 889 |

(*Ibid.*, p. 11.)

59.    Defendants EGLE and Benton Harbor, from 2019 to present, have failed, through the use of various anti-corrosive chemical devices and the hiring of agent contractors Defendants Einhorn, Inc., and BF&V Operations and Resource Management, to administer a successful, effective remedy to remove the large amounts of lead for the water supplied to residents.  Presently no study of effective corrosion plans has been submitted to EGLE.

60.    The lead in Defendant Benton Harbor's drinking water has increased, in the samples taken from June 1, 2018 to June 3, 2021; with the range of "sample results increasing from 0-60 to 0-889; the latest. (*Ibid.*, p. 11.)

61.    At no time have any of the Defendants, until Defendant Governor Whitmer's announcement of a State of Emergency, through the issuance of an Emergency Declaration on October 14, 2021, give any public notice of the crisis, though as early as September 2018, Defendants knew the City of Benton Harbor had exceeded the 15 ppb threshold for immediate action; it was in violation of SDWA exceedances.

62.    As a result of the citizen petition and legal submission by their attorneys, the US Environmental Protection Agency (EPA), on October 27, 2021, issued an inspection report to Defendant City Manager Ellis Mitchell, and copied to EGLE employees, Ernest Sarkipalo and Michael Bolf[7]:

> On September 20, 2021 through the 27th United States Environmental Protection Agency (EPA) conducted a compliance evaluation inspection of the Benton Harbor community water system (PWS ID MI0000600) Public Water System located in (Berrien County, Michigan). The purpose of the inspection was to make observations about the site conditions, operation, and monitoring of the System to evaluate compliance with the Safe Drinking Water Act (SDWA) and regulatory requirements. The inspection was conducted in coordination with the Michigan Department of Environmental, Great Lakes, and Energy (EGLE) and a copy is enclosed with this letter. (*Ibid.*, p. 1.)

63.    The extensive report, covering an inspection period this year September 20-27, 2021, found numerous violations of the Benton Harbor Public Water System, including but not limited to the following deficiencies; many of which such deficiencies had existed since at least 2018, and several prior to that time. See Compliance History. *Ibid.*, pp. 4-6.

64.    The EPA Report, in its Summary of Previous Sanitary Survey, shows numerous and comprehensive failures at Defendant Benton Harbor's Public Water System, none of which had been inspected or evaluated for violation by the State Defendants:

---

[7] US EPA, October 27, 2021 Letter and Report "Region 5 Enforcement and Compliance Assurance Division SDWA Drinking Water Inspection Report, City of Benton Harbor, Berrien County, Michigan".

| Summary of Previous Sanitary Survey 2018 Sanitary Survey Finding | 2021 Inspection | | Corrected |
|---|---|---|---|
| Source | Deficiency: need to inspect intake and restart mussel control | The intake was inspected July 2021. Repairs to the intake structure were made, but the mussel control system was not functional at the time of the inspection. | No |
| Treatment | Significant Deficiency: Coagulant feed needs ample mixing energy to be effective | Coagulate feed location was relocated to a mixing chamber at the plate settler basins. | Yes |
| Treatment | Deficiency: Finished water meters not functioning, can't determine CT. | Finish water meter is installed but is not being maintained. Finish water meter is not being used for compliance monitoring | No |
| Distribution System | Significant Deficiency: Formalize program to turn valves & flush hydrants. | Not Evaluated | Unknown |
| Distribution System | Significant Deficiency: Cross Connection Program needs complete overhaul | A new cross connection program was developed in 2020, but at the time of the inspection no actions had been taken to implement the 2020 plan. | No |
| Distribution System | Significant Deficiency: Many areas of low flow/no flow | Not Evaluated | Unknown |
| Distribution System | Deficiency: Aging water main replace is lacking | Not Evaluated | Unknown |
| Finished Water Storage | Deficiency: Reinspection of the elevated storage tank is overdue | At the time of the inspection, the tank was nearing completion of a substantial rehabilitation. The underground storage at the water treatment plant had several missing screens on vent pipes, and could not be accessed to evaluate sanitary conditions. | Partial |
| Monitoring and Reporting | Significant Deficiency: Fix continuous chlorine analyzer | The continuous chlorine analyzer was offline at the time of the inspection. | No |
| Monitoring and Reporting | Deficiency: MOR inaccurate information on treated water | The flow measurement method was inaccurate and based on a combination of uncalibrated depth sensors. | No |

| System Management & Operations | Significant Deficiency: Must commit to timeline for compliance | Benton Harbor is in the process of developing plans under an EGLE administrative order. Aspects of that order were addressed during the inspection | Ongoing |
|---|---|---|---|
| System Management & Operations | Significant Deficiency: Financial & Managerial Capacity is not met | System was unable to provide financial information at the time of the inspection. | Ongoing |
| System Management & Operations | Significant Deficiency: Hydraulic model calibration indicated areas of low flow | Not Evaluated | Unknown |
| Operator Compliance | Recommendation: Distribution & Treatment need more certified operators | Benton Harbor must determine the appropriate staffing level as a requirement of the EGLE administrative order. This item cannot be addressed until the staffing analysis is completed. | Ongoing |
| Financial | Significant Deficiency: Collection of rates is inefficient and ineffective | No records could be provided at the time of the inspection to evaluate this item. Bill collection is handled by a third-party contractor. | Unknown |
| Financial | Significant Deficiency: Rates insufficient to cover capital improvements | No records could be provided at the time of the inspection to evaluate this item. Benton Harbor was unable to provide a budget for water treatment activities. | Unknown |
| Other | Significant Deficiency: SCADA system needs additional functionality | Many continuous monitoring components and system automation functions were not working at the time of the inspection. The SCADA system was collecting inaccurate data. Alarm functions were unknown. | No |

65.    The EPA inspection, in October 2021, under "Section 4, Areas of concerns and Observations" showed numerous violations under 40 CFR 141 Lead and Copper Rule of Safe Drinking Water Act:

1)    Records Maintenance;

2)    Requirements when making a significant change in disinfection practice;

3)      Disinfection

4.      Emergency Response Plan, "During the inspection the Emergency Response Plan was not available since it had not yet been completed."

5.      Revised Total Coliform Rule – General monitoring requirements for all public water systems. Plan is outdated (40 C.F.R. 141.853)

6.      Monitoring and Analytical Requirements (40 C.F.R. 141 Subpart C)

7.      Enhanced Filtration and Disinfection – Systems Serving Fewer Than 10,000 People (40 C.F.R. 141 Subpart T)

8.      Treatment

9.      Potential Deficiencies

10.     A number of potential cross connections were identified throughout the treatment system

11.     Monitoring Equipment Issues
        (*Ibid.*, pp. 21-23.)

66.     Significantly, the EPA, under "Section 4.2 Additional Observations" found:

1.      The room above the raw water wet well had severe paint flaking on the ceiling.

2.      The fluoride saturator was located outside of the containment for the day tanks.

3.      A lack of automation has led to overflowing chemical tanks and operating chemical injections to the treated water when the treatment system was not in operation.

4.      At the time of the inspection, the system was unable to identify which alarms had call out capability for the SCADA system.

5.      Operation of the treatment plant is being conducted with both contract staff and employees of the City of Benton Harbor. It is unclear how the treatment plant operations staff is organized or supervised. A copy of the operations contact was not made available.

6.      There are no formal written agreements for the supply of emergency water through the system interconnects. The status of the valves to control those interconnects is also unknown.

7.      Benton Harbor was unable to provide a copy of the budget for the water treatment plant operations.

8.      Benton Harbor did not have records of customer complaints. (*Ibid.*, pp. 23-24.)

67.    On November 2, 2021, the EPA, Region 5 issued a Unilateral Administrative Order, Proceeding under Section 1414(g) of the Safe Drinking Water Act, 42 U.S.C. §300g-3(g), In the Matter of: City of Benton Harbor Public Water Supply, PWS ID MI0000600, Benton Harbor, Michigan, effectively immediately[8].

II.      FINDINGS OF FACT AND CONCLUSIONS OF LAW

4.      The City ("Respondent") is the owner and/or operator of the System located at 200 East Wall Street, Benton Harbor, Michigan 49022.

5.      Respondent is a "person," as defined by Section 1401(12) of the SDWA, 42 U.S.C. §300f(12), and 40 C.F.R. §141.2.

---

[8] US EPA Unilateral Administrative Order – Proceeding Under Section 1414(g) of the Safe Drinking Water Act, 42 U.S.C. §300g-3(g).

6.   The System is a "public water system" ("PWS") within the meaning of Section 1401(4) of the SDWA, 42 U.S.C. §141.2 that provides water from a surface water source.

7.   The system regularly serves at least twenty-five (25) year-round residents and is therefore a "community water system" ("CWS") within the meaning of Section 1401(15) of the SDWA, 42 U.S.C. §300f(15), and 40 C.F.R. §141.3.

8.   The System serves approximately 9,970 persons and has 3,335 active service connections.

9.   The System has an intake in Lake Michigan as its source of drinking water.

10.  Respondent's ownership and/or operation of the System makes it a "supplier of water" within the meaning of Section 1401(5) of the SDWA, 42 U.S.C. §300f(5), and 40 C.F.R. §141.2, and subject to the requirements of Part B of the SDWA, 42 U.S.C. §300g, and the NPDWRs at 40 C.F.R. Part 141.

11.  Pursuant to SDWA Section 1413, 42 U.S.C. §300g-2, EGLE has primary responsibility for the implementation and enforcement of the public water supply program in Michigan.

12.  Between September 20-27, 2021, EPA and EGLE conducted a joint compliance inspection of the System pursuant to Section 1445(b) of the SDWA, 42 U.S.C. §300j-4(b), and identified numerous violations of the NPDWRs identified in Paragraph 15-104 below, including NPDWR violations related to the System's technical, managerial, and financial capacity.
(*Ibid.*, pp. 3-21.)

13. On October 29, 2021, EGLE referred the identified violations to EPA to require the System to comply with the associated applicable requirements under SDWA.

14. On October 26, 2021, EPA met with EGLE to confer on this Order in conformance with Section 1414(g)(2) of the SDWA, 42 U.S.C. §303g-3(g)(2).

68. The EPA report shows the lead action level exceedances of the testing of water samples in Benton Harbor preceded Defendant Governor Whitmer's administration for some of the homes tested in Benton Harbor. In 2014, the lead level was 5 ppb, but by 2015 the lead level was 12, yet no effective action was taken, or warning to the citizens was made, to not ingest the water where the medical literature was clear, no level of lead is safe for human consumption. The November 2, 2021 EPA Unilateral Order shows the deliberate indifference to the residents of the City of Benton Harbor, going back at least to January 2016; under an "Action Level Exceedance" (ALE) trigger of 15 ppb:

<u>Lead and Copper Public Education</u>

15. The System is classified as a medium-sized PWS (3,301 to 50,000 people served) under the Lead and Copper Rule ("LCR"), as defined at 40 C.F.R. §§141.81(a)(2), and as such, was required to conduct sampling, beginning with two (2) consecutive six-month monitoring periods during July 1 to December 31, 1992 and January 1 to June 30, 1993 to determine compliance with the LCR at 40 C.F.R. §141.86(d).

16. After meeting lead and copper action levels during the two (2) consecutive six-month monitoring periods, a medium-sized water system may reduce monitoring frequency to

once per year. 40 C.F.R. §141.86(d)(1)(ii)(B); 141.86(d)(4).

17.   After three (3) consecutive years of monitoring, a medium-sized water system in compliance may further reduce the frequency of monitoring from annually to once every three (3) years. 40 C.F.R. §§141.81(d)(4)(iii).

18.   An LCR compliance sample is a sample that has been collected and analyzed for lead and copper according to the requirements of the LCR at 40 C.F.R. §141.86. The lead action level is exceeded if the concentration of lead in more than ten (10) percent of tap water samples collected during any monitoring period conducted in accordance with 40 C.F.R. §141.86 is greater than 0.015 mg/L (i.e., if the "90th percentile" lead level is greater than 0.015 mg/L or 15 parts per billion ("ppb")).

19.   **Between January 2016 and December 2018, the 90th percentile of the samples collected during this period was 22 ppb, which is a lead action level exceedance ("ALE") pursuant to the LCR at 40 C.F.R. §141.80(c).**

20.   Between January 2019 and June 2019, the 90th percentile of the samples collected during this sampling period was 27 ppb, which is a lead ALE pursuant to the LCR at 40 C.F.R. §141.80(c).

21.   Between July 2019 and December 2019, the 90th percentile of the samples collected during this sampling period was 32 ppb, which is a lead ALE pursuant to the LCR at 40 C.F.R. §141.80(c).

22.   Between January 2020 and June 2020, the 90th percentile of the samples collected during this sampling period was 23 ppb, which is a lead ALE pursuant to the LCR at 40 C.F.R. §141.80(c).

23.   Between July 2020 and December 2020, the 90th percentile of the samples collected during this sampling period was

24 ppb, which is a lead ALE pursuant to the LCR at 40 C.F.R. §141.80(c).

24. Between January 2021 and June 2021, the 90th percentile of the samples collected during this sampling period was 24 ppb[9], which is a lead ALE pursuant to the LCR at 40 C.F.R. §141.80(c).

69. The public education requirements, including containing all required elements under SWDA, which were not met by any of the Defendants at anytime from January 2018 to present, under 40 CFR §141.85. The EPA's Order states the following failures of public education:

25. A PWS that exceeds the lead action level based on tap water samples collected in accordance with 40 C.F.R. §141.86 must comply with certain public education requirements at 40 C.F.R. §141.85.

26. 40 C.F.R. §141.85(a) regulates the content of written public education materials (e.g., brochures and pamphlets), while 40 C.F.R. §141.85(b) regulates the delivery of such public education materials.

27. Pursuant to 40 C.F.R. §141.85(b)(2)(ii)(A), a CWS that exceeds the lead action level must contact the local health department and deliver education materials that meet the content requirements of 40 C.F.R. §141.85(a) to local public health agencies even if they are not located within the water system's service area, along with an informational notice that encourages distribution to all the organization's potentially affected customers or CWS's users.

---

[9] This test must be scrutinized and is suspect. The initial result using the standard 63 samples was 33 ppb, but additional water samples were taken in homes to bring the ppb number down to 24. *Ibid.*, pp. 4-5.

28.   40 C.F.R. §141.85(b)(3) requires contact with the local health department at least every twelve (12) months as long as the CWS exceeds the lead action level.

29.   According to the System's February 2021 and August 2021 public education certifications, the System did not contact the local health department in the 12-month period between August 2020 and August 2021.

30.   **Respondent's failure to contact the local health department in the 12-month period between August 2020 and August 2021 is a violation of 40 C.F.R. §§141.85(b)(2)(ii)(A) and 141.85(b)(3).**

31.   **Pursuant to 40 C.F.R. §141.85(b)(2)(ii)(B), a CWS that exceeds the lead action level must contact customers who are most at risk by delivering materials that meet the content requirements of 40 C.F.R. §141.85(a) to the following organizations within the water system's service area, along with an informational notice that encourages distribution to all the organization's potentially affected customers or CWS's users: public and private schools or school boards, Women, Infants and Children (WIC) and Head Start programs, public and private hospitals and medical clinics, pediatricians, family planning clinics, and local welfare agencies.**

32.   40 C.F.R. §141.85(b)(3) requires contact with the organizations identified in 40 C.F.R. §141.85(b)(2)(ii)(B) at least every twelve (12) months as long as the CWS exceeds the lead action level.

33.   According to the System's February and August 2021 public education certifications, the System did not contact public and private hospitals, pediatricians, family planning clinics, community centers, or adult foster care facilities in the 12-month period between August 2020 and August 2021.

34.    During the September 2021 Inspection, the inspectors asked the System to produce a distribution list confirming that organizations identified in 40 C.F.R. §141.85(b)(2)(ii)(B) within the System's service area were contacted and delivered materials.

35.    During and after the September 2021 Inspection, the System did not produce the requested distribution list.

36.    Respondent's failure to contact certain organizations identified in 40 C.F.R. 40 C.F.R. §141.85(b)(2)(ii)(B) in the 12-month period between August 2020 and August 2021 is a violation of 40 C.F.R. 40 C.F.R. §§141.85(b)(2)(ii)(B) and 141.85(b)(3).

37.    Pursuant to 40 C.F.R. §141.85(b)(2)(ii)(C), a CWS that exceeds the lead action level must make a good faith effort to locate the following organizations within the service area and deliver materials that meet the content requirements of 40 C.F.R. §141.85(a) to them, along with an informational notice that encourages distribution to all potentially affected customers or users: licensed childcare centers, public and private preschools, and obstetricians-gynecologists and midwives.

38.    40 C.F.R. §141.85(b)(3) requires good faith effort to locate such organizations identified in 40 C.F.R. §141.85(b)(2)(ii)(C) at least every twelve (12) months as long as the CWS exceeds the lead action level.

39.    **According to the System's February and August 2021 public education certifications, the System did not make a good faith effort to locate and contact obstetricians-gynecologists in the 12-month period between August 2020 and August 2021.**

40.    **Respondent's failure to make a good faith effort to locate organizations identified in 40 C.F.R. §141.85(b)(2)(ii)(C) in the 12-month period between**

**August 2020 and August 2021 is a violation of 40 C.F.R. §§141.85(b)(2)(ii)(C ) and 141.85(b)(3).**

41.   **Pursuant to 40 C.F.R. §141.85(b)(2)(iii), a CWS that exceeds the lead action level must provide, no less often than quarterly, information on or in each water bill, including verbatim text, notifying customers that the system has found high levels of lead, as long as the system exceeds the lead action level.**

42.   40 C.F.R. §141.85(b)(3) requires provision of the information required under 40 C.F.R. §141.85(b)(2)(iii) in each billing cycle.

43.   According to the System's February and August 2021 public education certifications, the System did not provide information notifying customers that the System has found high levels of lead in each water bill during the 12-month period between August 2020 and August 2021.

44.   During the September 2021 Inspection, the System stated to the inspectors that no public education materials are sent with water bills delivered through the mail.

45.   Respondent's failure to provide information notifying customers that the System has found high levels of lead in each water bill during the 12-month period between August 2020 and August 2021 is a violation of 40 C.F.R. §§141.85(b)(2)(iii) and 141.85(b)(3).[10]

70.   Plaintiff Class Representatives and Class Members were never told by any of the Defendants, including the state Defendants, that Defendant Benton Harbor's water had, and continues to have, high levels of lead and is unsafe for ingestion.  An alternative water supply was needed, yet never explored.

---

[10] *Ibid.*, pp. 5-7.

71.     The Required Elements of Public Notice for Public Water Systems under the EPA are specific. Notices must contain:

> There are 10 required elements in a public notice.  Notices must contain:
>
> - A description of the violation that occurred;
> - The potential health effects (including standard required language);
> - The population at risk, including subpopulations vulnerable if exposed to the contaminant in their drinking water;
> - Whether alternate water supplies need to be used;
> - What the water system is doing to correct the problem;
> - Actions consumers can take;
> - When the system expects a resolution to the problem;
> - How to contact the water system for more information; and
> - Language encouraging broader distribution of the notice.

72.     For more than three (3) years Defendants, each and all of them were aware of the progressively worsening lead in water emergency but failed in their responsibilities, under CFR 40, §141.85 to notify and warn Benton Harbor residents, including Plaintiff Class Representatives and Plaintiff Class Members herein, of the escalating lead poisoning water crisis; further, each Defendant deliberately failed to correct the silent, yet severely harmful water crisis affecting the residents of Benton Harbor.

73.     Not until October 14, 2021, less than one month ago, did State Defendants and Governor Gretchen Whitmer issue an Executive Declaration and begin to address the harm interfering with the bodily integrity of its citizens:

33

"WHEREAS, on October 14, 2021, Michigan Governor Gretchen Whitmer issued Executive Directive No. 2021-6 ("Executive Directive") that requires, among other actions, a whole-of-government response that directs Michigan departments and agencies to expeditiously take all appropriate action to ensure residents of Benton Harbor have immediate access to free bottled water for consumption through distribution sites and drop-off delivery until further notice.

WHEREAS, the Executive Directive also requires, among other actions, that Michigan departments and agencies expeditiously take all appropriate action to leverage available state resources to support the City in replacing lead service lines."

74.    Plaintiffs will continue to be harmed as a result of Defendants' actions and omissions starting in January 2018, and continuing.

## CLASS ALLEGATIONS

75.    Plaintiffs bring this case as a proposed class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

76.    This action is brought by the named Plaintiffs on behalf of individuals who from, at least June to September 2018 to present, were exposed to toxic Benton Harbor water, which contained high levels of lead, and have experienced an injury, both physical and/or emotionally, to their person or property, whether as an owner or renter.  Future damages and harm are ongoing because the harm has not been abated.

77.    Benton Harbor is a city with approximately 10,000 residents. The number of injured individuals who have been injured by exposure to lead in the Benton Harbor water is in the thousands. The number of class members is

sufficiently numerous to make class action status the most practical method for Plaintiffs to secure redress for injuries sustained and class wide equitable relief.

78.    There are questions of law and fact raised by the named Plaintiffs' claims common to, and typical of, those raised by the Class they seek to represent against all the Defendants.

79.    The violations of law and resulting harms stated by the named Plaintiffs are typical of the legal violations and harms suffered by all Class members, including but not limited to, non-economic injury and economic injury.

80.    Plaintiff Class Representatives will fairly and adequately protect the interests of the Plaintiff Class Members. Plaintiffs' counsels are not aware of any conflicts of interest between the class representatives and absent class members with respect to the matters at issue in this litigation; the class representatives will vigorously prosecute the suit on behalf of the Class; and the Class Representatives are represented by counsel with experience in class actions and experience in cases with environmental lead contamination. Plaintiffs are represented by attorneys with substantial experience and expertise in complex and class action litigation involving personal and property damage.

81.    Plaintiffs' attorneys have identified and thoroughly investigated all claims in this action, and have committed sufficient resources to represent the Class.

82.     The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice. Moreover, the prosecution of separate actions by individual members of the Class could result in inconsistent, or varying adjudications, with respect to individual members of the Class and/or one or more of the Defendants.

83.     Defendants have acted or failed to act on grounds generally applicable to all Plaintiffs, necessitating a remedy which is overarching in its scope for declaratory, equitable and injunctive relief for the Class.

**COUNT I**
**CAUSE OF ACTION: VIOLATION OF 42 U.S.C. §1983**
**SUBSTANTIVE DUE PROCESS – STATE CREATED DANGER**
**ALL DEFENDANTS**

84.     Plaintiff Class Representatives and Class Members incorporate paragraphs 1-83, as fully set forth herein.

85.     The due process clause of the 14th Amendment provides that the state may not deprive a person of life, liberty, or property, without due process of law.

86.     These Defendants deliberately failed to notify and/or warn residents of Benton Harbor, for over three (3) years, that their drinking, cooking, washing, and bathing water was contaminated with lead. The Defendants, by deciding not to require Benton Harbor's public water system to comply with Federal and State SDWA CRF 40 §141.35 on public notice and education, deliberately exposed Plaintiffs and the Plaintiff Class to dangerous, unsafe lead levels.  The Defendants

have not yet required a comprehensive corrosion study though such a study should immediately be performed, whether it is an exceedance over 15 ppb on samples. Knowing the high lead levels in the water would result in widespread permanent serious damage in adults, and particularly, the irreversible lead poisoning of children, which adversely affects their cognitive, physical and developmental status; and other vulnerable persons, the Defendants acting with deliberate indifference engaged in decision making that shocks the conscientious. This conduct was culpable in the extreme.

87.    Plaintiffs' and Class Members' injuries and damages were foreseeable where state Defendants' decision to not advise Plaintiff Class Representatives, and Class Members, of the extremely high lead levels was sure to cause injury.

88.    The decisions and actions to deprive Plaintiffs and the Plaintiff Class of clean and safe water by not warning them that their water was poison, and instead, secretly trying to solve the problem constituted affirmative acts that caused and/or increased the risk of harm, both  to their property and damage, physical and emotional injury to Plaintiffs Representatives and Plaintiff Class.

89.    At all times herein Defendants acted under color of law.

90.    The unconstitutional acts of State officials operating in their official capacity executes a policy statement, or decision, officially adopted by the

Defendant City of Benton Harbor, and its agent contractor, Defendant Einhorn Engineering and F&V contract Water Plant Manager.

91.    As a direct and proximate result of the unconstitutional acts of Defendants, as alleged in this complaint, Plaintiffs and Plaintiff Class members have experienced serious, and in some cases, life threatening and irreversible bodily injury. Plaintiff Class Representatives and Plaintiff Class members will incur substantial economic losses in the nature of medical expenses, and/or lost wages; Plaintiffs and Plaintiff Class members are entitled to an award of non-economic damages in the nature of pain and suffering, embarrassment, outrage, mental anguish, fear and mortification, and stress related physical symptoms, such as sleepiness, hypertension, gastrointestinal discomfort, neuropathy, skin disease and similar symptoms.

92.    Plaintiff Class Representatives and Plaintiff Class members have experienced property damage to the homes, places of worship, and business, in the nature of lost property value and seek damages to remediate the permanent damage caused by the failure to advise of the high lead levels in the water, and utilizing multiple alleged anti-corrosive chemicals, which do not, to date, have an effective solution to provide clean, safe water to the Benton Harbor residents.

93.    The conduct of Defendants was reckless and outrageous, entitling Plaintiffs and Plaintiff Class members to an award of punitive damages.

**COUNT II**
**CAUSE OF ACTION: VIOLATION OF 42 U.S.C. §1983**
**SUBSTATIVE DUE PROCESS – BODILY INTEGRITY**
**PLAINTIFFS v ALL DEFENDANTS**

94.     Plaintiff Class Representatives and Class Members incorporate paragraphs 1-93, as fully set forth herein.

95.     The due process clause of the 14th Amendment includes an implied right to bodily integrity. Plaintiffs have a clearly established fundamental right under the substantive due process clause of the Fourteenth Amendment to the US Constitution to bodily integrity.

96.     Defendants violated Plaintiff Class Representatives' and Plaintiff Class members' right to bodily integrity, insofar as:

a.     Defendants had a duty to protect Plaintiff Class Representatives and Plaintiff Class members from a foreseeable risk of harm from lead contaminated water and other anti-corrosive chemicals;

b.     Defendants knew, and were aware, of the serious medical risks associated with exposure to contaminated water containing high levels of lead when ingested into the human body;

c.     Defendants failed to protect Plaintiff Class Representatives and Plaintiff Class members from the known risks associated with exposure to contaminated water;

d.     Defendants were aware that their conduct could result in the deprivation of Plaintiffs' fundamental due process rights to bodily integrity; and

e.     Plaintiff Class Representatives and Plaintiff Class members suffered bodily harm as a result of their exposure to lead contaminated water; and lead entering their bodies.

97.    Defendants' conduct in exposing Benton Harbor residents to toxic water, containing lead, was so egregious and so outrageous, that it shocks the conscience. Defendants, for more than three (3) years of deliberation, and decision making, and consciously made the repeated decision not go give Defendant Benton Harbor's water system a violation for not complying with the SDWA CRF 40 §141.35; failed to warn the residents of the toxic lead in their water and their decision, not to provide the warning, was made with deliberate indifference to the serious medical risks.

98.    As a direct and proximate result of the unconstitutional acts of Defendants, as stated in this Complaint, Plaintiff Class Representatives and Plaintiff Class members have experienced serious, and in some cases, life threatening and irreversible bodily injury; Plaintiff Class Representatives and Plaintiff Class members have, and will incur, substantial economic losses in the nature of medical expenses and/or lost wages and payment for water which is not useable;  Plaintiff Class Representatives and Plaintiff Class members are entitled to an award of non-economic damages in the nature of pain and suffering, embarrassment, outrage, mental anguish, fear and mortification, and stress related physical symptoms such as sleepiness, gastrointestinal discomfort, neuropathy and similar symptoms.

99.    The custom and practice of the decision not to enforce the SDWA from 2018, specifically §141.35 public notice, state Defendants were deliberately

indifferent, entitling Plaintiff Class Representatives and Plaintiff Class members to an award of punitive damages.

## COUNT III
### VIOLATION OF THE LEAD AND COPPER RULE OF THE SAFE DRINKING WATER ACT; VIOLATION OF STATE OF MICHIGAN'S SAFE DRINKING WATER ACT 1976 PA 399, AS AMENDED AND ADMINISTRATIVE RULES OF MICHIGAN'S SAFE DRINKING WATER ACT, MI. ADM. COLDE R. 325.11 606

100.   Plaintiff Class Representatives and Class Members incorporate paragraphs 1-99, as fully set forth herein/

101.   The Defendants, as stated in the EPA Unilateral Order, have violated Section 1414(g) of the Safe Drinking Water Act, 42 U.S.C. §300g-3(g); including but not limited to:

a)   Exceeding the Action Level Exceedances for tap water samples for January 2016 to present, 40 CFR §141.86;

b)   Failing to comply with public education requirements, §141.85 (*Ibid*, p. 5);

c)   Failing to contact the "local health department and deliver educational materials that meet the content requirements of 40 CFR §141.85(a);

d)   Failing to contact the local health department at least every 12 months; §141.85(b)(3) (*Ibid*, p. 5);

e)   Failing, under §141.85(b)(2)(ii)(B) to contact customers who are most at risk by delivering materials that meet the content requirements of 40 CFR §141.85(a) when the action level area, including "public and private schools, or school boards, Women, Infant and Children (WIC) and Head Start programs, public and private hospitals and medical clinics, pediatricians, family

planning clinics and local welfare agencies. The contact is required every twelve (12) months. (*Ibid*, pp. 5-6.);

f)      Failure to make a good faith effort to deliver materials that meet content requirements of 40 CFR §141.85(a) to licensed childcare centers, public and private preschools and obstetricians, gynecologists and midwives at least every twelve (12) month period. (*Ibid*, p. 6.);

g)      Failed to notify "no less than quarterly" information and/or in each water bill, including verbatim text, notifying customers that the system has found high levels of lead.  (*Ibid*, p. 6);

h)      Failure to calibrate the turbidimeters consistent with the manufacturer's recommendation is a failure to accurately measure turbidity, 40 CFR §141.74(c)(1)  (*Ibid*, p. 8);

i)      Failure to calibrate the chlorine analyzers every five (5) days with grab sample when in operation is a violation of  40 CFR §141.74(a)(2) (*Ibid* 8);

j)      Failure to repair the continuous chlorine analyzer monitoring the residual disinfectant concentration of the water entering the distribution system no more than five (5) working days following the failure of the equipment 40 CFR §141.74(c)(2) (*Ibid*, p. 9.);

k)      Failure to maintain continuous monitoring of the residual disinfectant concentration 40 CFR §141.74(c)(2) (*Ibid*, p. 9.);

l)      Failure to maintain alarms and/or alerts through the Supervisory Control and Data Acquisition (SCADA) system is a violation of 40 CFR §141.74(e) (*Ibid*, pp. 9-10.);

m)      Failure to calculate CT, failure to maintain a properly functioning flow meter, failure to maintain working continuous chlorine analyzer; all of which is needed to calculate disinfection profiles pursuant to the NPDWRS, 40 CFR §141.533 (*Ibid*, p. 11.);

n)      Failure to develop disinfection profiles and disinfection benchmarks prior to making changes to the point of disinfecting,

in 2017, pursuant to the NPDWRs, is a violation of 40 CFR §141.540 (*Ibid*, p. 11.);

o)   Failure to perform OEL calculations pursuant to the NPDWRs is a violation of 40 CFR §141.626 (*Ibid*, p. 12);

p)   Failure during the September 2021 Inspection by the EPA to demonstrate that it performs OEL calculations (*Ibid,* p. 13).

102.   On October 23, 2018, the America's Water Infrastructure Act ("AWIA") of 2018 (Public Law 115-270) amended the SDWA.

103.   Section 1433(a)(1) of the SDWA, 42 U.S.C. §300i-2(a)(1), requires each CWS serving a population of greater than 3,300 persons to conduct a Risk and Resilience Assessment (RRA) of its system.

104.   Defendants violated the AWI Act which amends the SDWA by:

a)   Section 1433(d) of the SDWA, 42 U.S.C. §300i-2(d), requires that each CWS shall maintain a copy of the RRA and the ERP (including any revised RRA or ERP) for five (5) years after the date on which a certification of such assessment or plan is submitted;

b)   According to EPA's AWIA database, the System certified on June 29, 20219 that it had completed both an RRA and an ERP;

c)   During the September 2021 Inspection, the System stated that it could not produce the ERP because it had not yet prepared the ERP;

d)   Respondent's failure to retain a copy of the ERP pursuant to Section 1433(b) of the SDWA, 42 U.S.C. §300i-2(b), is a violation of Section 1433(d) of the SDWA, 42 U.S.C. §300i-2(d).

105. Defendants failed to, and continue to violate, the "Record Maintenance" requirements of 40 CFR §141.33 in the following ways, including but not limited to:

   a)   Failure to retain records of microbiological, turbidity, and chemical analyses made pursuant to the NPDWRs is a violation of 40 C.F.R. §141.33(a) (*Ibid*, p. 15);

   b)   Failure to retain complete records of Total Organic Carbon precursor monitoring and DBP distribution system sampling made pursuant to the NPDWRs is a violation of 40 C.F.R. §141.33(a);

   c)   Failure to retain complete lead and copper public education materials required by 40 C.F.R. §141.85 is a violation of 40 C.F.R. §141.91 (*Ibid*, p. 14.)

106. Violations of Michigan's SDWA and Administrative Rules by Defendant Benton Harbor, from 2018 to present, have not been promptly remedied, as shown in the Emergency Petition 45.

107. Violations in 2019, in addition to the lead exceedances, show Defendant DEQ and the EGLE knew that Defendant's Water Department was in comprehensive violation of both Federal and State Safe Drinking Water rules as follows:

   ▪   Failed to conduct Water Quality Parameter sampling for the period of January 1, 2019 to June 30, 2019. Water Quality Parameters include chloride, sulfate, conductivity, pH, alkalinity, temperature, and calcium.
   ▪   Failed to conduct all required lead and copper monitoring for the periods of January 1, 2019 to June 30, 2019, and July 1, 2019 to December 31, 2019.

- Failed to conduct required monitoring for Synthetic Organic Contaminants (SOCs) during the monitoring period of April 1, 2019 to June 30, 2019.
- Received a reporting violation for submitting a Consumer Notice of Lead and Copper to EGLE past the deadline in September 2019[11].

108.   In 2019, State Defendant decided it would not require City Defendants to comply with the SDWA 40 USF §141.35.

109.   On March 8, 2019, Defendants EGLE and Benton Harbor executed an Administrative Consent Order that required Benton Harbor to either submit a proposal for optimal corrosion control treatment, or a corrosion control study, no later than May 1, 2019.

110.   On August 7, 2020, Defendants Benton Harbor and EGLE amended its Administrative Order.

111.   In neither of Defendant EGLE's Consent Orders did it require City Defendants to give notice to the residents of Benton Harbor, including specific agencies, schools, and at risk sub-communities, pursuant to SDWA CRF 40 §141.35.

112.   In addition to its public notice failures under SDWA CRF 40 §141.35, the Defendants have failed to timely perform a corrosion control study and budget inadequate funds. Nor have the Defendants, to this date, completed a fully compliant control corrosion control study under either the state or federal SDWA.

---

[11] Defendant Benton Harbor website, Consumer Confidence Report for 2019.

113.   Nor had State Defendants required the City Defendants to replace lead service lines at a 7% annual rate. 40 CFR 142.84(b)(2020). (*Ibid.*, Petition, pp. 20-21; *Ibid.*, p22.)

114.   In 2020, violations were again issued under the Michigan Safe Drinking Water Act, 1976 PA 399 as amended and the Administrative Rules. Defendant's website showed 2020 violations under state law as follows:

- "Monitoring Requirements Not Met for the City of Benton Harbor

  We are required to monitor your drinking water for specific contaminants on a regular basis. Results of regular monitoring are  an indicator of whether or not our drinking water meets health standards. We routinely monitor your water for turbidity (cloudiness) and chlorine disinfectant residuals at many locations. This tells us whether we are effectively filtering and disinfecting the water supply. We had an equipment failure that did not properly record the 15-minute individual filter turbidity results and maintain the records for three years as required by law. We observe the turbidities every hour and did not observe any water quality issues.

  We also had a failure of the chlorine monitoring equipment, which continuously provides the chlorine levels entering the system. Low chlorine levels, if measured, become a concern over lack of disinfection. We also measure chlorine residual manually and did not find any low levels of chlorine to raise concerns over disinfection levels. However, the manual measurements are not collected continuously."

- "Monitoring Requirements Not Met for the City of Benton Harbor

  We are required to monitor your drinking water for specific contaminants on a regular basis. Results of regular monitoring

are an indicator of whether or not our drinking water meets health standards. During the first 3 quarters of 2020, we did not monitor or test for Synthetic Organic Compounds (SOC) from the correct location and therefore cannot be sure of the quality of our drinking water during that time.  However, this violation **does not** pose a threat to your supply's water."

- "Monitoring Requirements Not Met for the City of Benton Harbor

  We are required to monitor your drinking water for specific contaminants on a regular basis. Results of regular monitoring are an indicator of whether or not our drinking water meets health standards. During the six-month period of August 3, 2020 through February 3, 2021 we did not monitor or test for PFAS (Per-and polyfluoroalkyl substances) and therefore cannot be sure of the quality of our drinking water during that time. However, this violation **does not** pose a threat to your supply's water."

## COUNT IV
## UNJUST ENRICHMENT – ALL DEFENDANTS

115.   Plaintiff Class Representatives and Class Members incorporate paragraphs 1-114, as fully set forth herein.

116.   Defendants failed to incur expenditures to limit, or prevent, the release of toxic water, containing high levels of lead, through Defendant Benton Harbor's water lines and prevent the contamination to Plaintiff and Class Members' properties and household water supplies; failed to incur the costs to timely investigate the impacts on Plaintiff and Class Members, and their properties; failed to incur the costs to timely mitigate the impacts on Plaintiff and Class Members and their properties; and failed to incur costs to remediate the pipes, ground, and other damage, done to

their property.  Defendants have been unjustly enriched by these and other failures to make expenditures to prevent the persons and properties of the Plaintiff and Class Members' from being harmed by the purchase of lead in its water.

117.   Defendants' failure to incur necessary expenditures ,to correct the high lead levels, was at the cost of the Plaintiff Class Representatives and Class Members' property and wellbeing.

118.   The cost savings to Defendants, including savings from failing to replace, and/or install an efficient and adequate proper anti-corrosive solution to the lead in the water, is a measurable monetary amount.

119.   Defendants have received Defendant Benton Harbor's pipes measurable monetary benefit by failing to make the necessary expenditures. It would be unconscionable and contrary to equity for Defendants to retain that benefit. The Court, therefore, should award as a remedy, an amount equivalent to the expenditures saved and the profits obtained by City of Benton Harbor Defendants, at the expense of Plaintiff Class Representatives and Class Members. Accordingly, City Defendants are liable for the compensatory and punitive damages to Plaintiff Class Representatives and Class Members.

120.   As a direct result of City Defendants' failures, Plaintiffs have paid, and continue to pay, for water which they cannot use.

## COUNT V
## BATTERY – ALL DEFENDANTS

121.   Plaintiff Class Representatives and Class Members incorporate paragraphs 1-120, as fully set forth herein.

122.   Defendants' release of toxic water, with high levels of lead into the homes of Plaintiff Class Representatives and Class Members, caused exposure and therefore harmful and offensive contact with Plaintiff Class Representatives and Class Members.

123.   Defendants knew, or should have known, that their failure to warn and continue pumping of water into Plaintiff Class Representatives' and Class Members' homes, was substantially certain to cause bodily contact, injury, damage, or harmful and offensive contact with Plaintiffs.

124.   Defendants lacked any privilege or consent to cause harmful and offensive contact with Plaintiff by their providing Plaintiffs with harmful, unsafe and poisoned water with high levels of lead.

125.   Defendants' conduct, causing harmful and offensive contact, was intentional, or at least grossly or culpably negligent conduct, or wanton and reckless conduct.

126.   Defendants' actions constituted constructive intent to injure; their intent to injure may be inferred from their conduct, which threatened the safety of others,

and was so reckless or manifestly indifferent to the consequences of the harmful and offensive contact.

127.   Defendants' unauthorized contact has actually offended a reasonable sense of personal dignity of the Plaintiff Class Representatives and Class Members.

128.   Defendants' continuous supplying of the water to Benton Harbor residents, including Plaintiff Class Representatives and the Class Members, have resulted in an unauthorized contact with Plaintiff Class Representatives and Class Members.

129.   As a direct and proximate result of Defendants' battery, Plaintiff Class Representatives and Class Members have suffered damages, including those damages of a physical, psychological and economic nature. Defendants are liable for the compensatory and punitive damages to Plaintiff Class Representatives and Class Members.

130.   Accordingly, Defendants are liable for the compensatory and punitive damages to Plaintiff Class Representatives and Class Members.

## COUNT VI
## NEGLIGENCE  - DEFENDANTS AND EINHORN ENGINEERING AND F&V OPERATIONS AND RESOURCE MANAEMENT, INC., AND ITS AGENTS

131.  Plaintiff Class Representatives and Class Members incorporate paragraphs 1-130, as fully set forth herein.

132.    Defendants Einhorn Engineering Company, and F&V Operations, as an agents for the City of Benton Harbor, owed Plaintiff Class Representatives and Class Members, a duty of reasonable care in performing their activities and operations of the Defendant's Benton Harbor's Water Department, and in minimizing, mitigating, and remediating the impacts of their activities and operations. Defendants failed to exercise the degree of care which a reasonable and prudent person would use under similar circumstances to protect the Plaintiff Class Representatives and Class Members from damage. That duty included fully understanding the toxicity of the anti-corrosive chemicals used to abate and sequester the high levels of lead in the water service lines and eliminating releases of toxic chemicals, identifying alternatives to toxic chemicals released while attempting to abate the lead, or understanding the mechanisms of release and transport of toxic chemicals through the water, without investigating, mitigating and remediating the impacts of the chemicals released by Defendants.

133.    Defendants had a duty, in particular, to: (1) identify the potentially harmful anti-corrosive chemicals used by their operations to attempt to abate the lead in the Plaintiff Class Representatives' and Class Members' water; (2) investigate and understand the characteristics of the chemical byproducts of their operations before releasing those byproducts into the water; (3) conduct their operations in a manner that would not unreasonably endanger human health and the environment; (4)

control, minimize, and eliminate releases of the anti-corrosive chemical materials so as to further create a risk of harm to the Plaintiff Class Representatives and Class Members; (5) investigate and remediate environmental releases that they knew posed a potential risk to human health and the environment; and (6) warns Plaintiff Class Representatives and Class Members of the use of the anti-corrosive chemicals that created a probable risk to human health and contamination of Plaintiff Class Representatives' and Class Members' property including, but not limited to, Plaintiff Class Representatives' and Class Members' water, groundwater, and/or water systems, due to the persistence and toxicity of these substances; in addition to the high lead levels in the water.

134.   Defendant F&V, by contract in 2020, managed Defendant Benton Harbor's Water Plant through its employees and agents.

135.   The EPA's Unilateral Report shows F&V employees were not competent to manage the Public Water System and, upon inspection by the EPA, were unable to respond to basic questions of procedure and substance.

136.   Defendants failed to exercise ordinary and reasonable care in the use of substances including, but not limited to anti-corrosive chemicals, which did not correct the problem of excessive lead in the water, but instead made it worse.

137.   Defendant Einhorn, nor Defendant F&V, did not provide the Plaintiff Class Representatives and Class Members with a warning that the water was unsafe to ingest.

138.   Defendants negligently breached their duty of care to Plaintiff  Class Representatives and Class Members, as identified above, including by releasing and allowing the release of known toxic chemicals into Defendant Benton Harbor's anti-corrosive service lines, resulting in an increase of lead in the water supply, which continues to this day.

139.   Defendants negligently breached their duty and by negatively failing to warn the Plaintiff Class Representatives and Class Members of the use of anti-corrosive chemicals, and that lead levels in the water were too high to be used safely.

140.   Defendants' negligence has caused contamination of Plaintiff Class Representatives' and Class Members' properties and caused exposure of Plaintiff Class Representatives' and Class Members' to continue through its water lines of lead particles, material and anti-corrosive chemicals.

141.   Defendants' failure to exercise ordinary and reasonable care has directly and proximately caused the lead service lines to become increasingly unusable to deliver safe water to the Plaintiff Class Representatives and Class Members.

142.   Defendants' failure to exercise ordinary and reasonable care has directly and proximately caused Plaintiff Class Representatives and Class Members to suffer injury, damage, and harm to their property as set forth above, and continuing.

143.   Plaintiff Class Representatives and Class Members require medical monitoring for their lifetime.

144.   The harm to Plaintiff Class Representatives and Class Members was reasonably foreseeable.

145.   As a direct and proximate result of Defendants' negligence, Plaintiff Class Representatives and Class Members have suffered damages and losses, including but not limited to, economic and non-economic damages stated above. Accordingly, Defendants are liable for compensatory and punitive damages to the Plaintiff Class Representatives and Class Members.

## COUNT VII
## NEGLIGENCE
## FAILURE TO WARN - ALL DEFENDANTS

146.   Plaintiff Class Representatives and Class Members incorporate paragraphs 1-138, as fully set forth herein.

147.   Defendants had a duty to exercise reasonable care with respect to their operation of Defendant Benton Harbor's water system.

148.   Defendants failed to correct the condition and continued to allow water, with excessive lead, in violation of the state and national Lead and Copper rule, to be released into the Benton Harbor water service lines, with knowledge of the likelihood that household water supplies of the Plaintiff Class Representatives and Class Members could be affected.

149.   Despite knowing the risk of harm to Plaintiff Class Representatives and Class Members, Defendants failed to warn the Plaintiff Class Representatives and Class Members of the likelihood that the water contained high levels of lead and should not be ingested.

150.   Defendants breached their duty to exercise reasonable care and to warn the Plaintiff Class Representatives and Class Members of the release of water with excessive levels of lead into the water service lines used by them.

151.   The harm to the Plaintiff Class Representatives and Class Members was reasonably foreseeable.

152.   As a direct and proximate result of Defendants' negligent failure to warn, Plaintiff Class Representatives and Class Members have suffered damages, including those damages identified as economic and non-economic damages stated above. Accordingly, Defendants are liable for the compensatory and punitive damages to Plaintiff.

## COUNT VIII
## TRESPASS TO REAL PROPERTY – ALL DEFENDANTS

153.   Plaintiff Class Representatives and Class Members incorporate paragraphs 1-152, as fully set forth herein.

154.   As a result of the intentional conduct and activities of the Defendants, the releases of water, with high levels of lead in Defendant Benton Harbor's service line, in violation of the state and national Lead and Copper rule, Defendants have physically intruded onto and wrongfully entered, Plaintiff Class Representatives' and Class Members' properties and continue to so intrude, when Plaintiff Class Representatives' and Class Members' possessory interest in their properties without Plaintiff Class Representatives' and Class Members' permission, whether express or implied.

155.   The physical intrusion of the water with high lead content released by Defendants onto and into the properties of Plaintiff Class Representatives and Class Members, has physically injured and damaged their properties and continues to do so, including by contaminating and physically altering the soil, fixtures, structures, household water and other physical aspects of Plaintiff Class Representatives' and Class Members' properties. Plaintiff Class Representatives' and Class Members' air, household water, and the water systems on Plaintiff Class Representatives' and Class Members' property, have been damaged by the Defendants' release, through Defendant Benton Harbor's lead lines high levels of toxic water with lead, and after

January 2018, high levels of anti-corrosive chemicals, and will continue to be damaged.

156. The Plaintiff Class Representatives' and Class Members' property was damaged by the lead and other chemicals released by Defendants that would not have been present but for the actions by Defendants, whose actions caused exposure of Plaintiff Class Representatives and Class Members and their properties to toxic water. The intentional release of water with toxic compounds, including lead and other anti-corrosives, constitutes the intent to commit the equivalent of an entry.

157. Defendants' operation, and the state Defendants' supervision and instruction to Defendant Benton Harbor, and its residents, and their discharges, emissions, and releases of PFAS, have resulted in an unauthorized interference with Plaintiff Class Representatives' and Class Members' possession and use of their property as well, including but not limited to Plaintiff Class Representatives' and Class Members' appliances, (including washing machines), water heaters, and filtration system.

158. As a direct and proximate result of Defendants' trespass by the physical intrusion of toxic releases from the acts and omissions of Defendants onto the properties owned and/or occupied by Plaintiff Class Representatives and Class Members, they have suffered damages and losses , both economic and non-economic

damages stated above. The harms to Plaintiff Class Representatives and Class Members was reasonably foreseeable.

159.  Accordingly, Defendants are liable for compensatory and punitive damages to Plaintiff Class Representatives and Class Members.

## COUNT IX
## PRIVATE NUISANCE
## ALL DEFENDANTS

160.  Plaintiff Class Representatives and Class Members incorporate paragraphs 1-151, as fully set forth herein.

161.  The releases of chemicals resulting from Defendants' supervision, instruction and oversight of Defendant Benton Harbor's Water Department, have caused and continue to cause a substantial and significant interference with the Plaintiff Class Representatives' and Class Members' health, properties and their present and future need to incur the cost of diagnostic testing to monitor, each Plaintiff Class Representative and Class Member, for the early detection of illness, disease, and discase process which can be caused by Defendants' actions.

162.  The releases of chemicals resulting from Defendants' operation caused, and continue to cause, such substantial interference with Plaintiff Class Representatives' and Class Members' property as to be considered unreasonable. The Defendants' actions were unreasonable to a person of ordinary prudence and discretion. Releasing through Benton Harbor's service water lines, containing high

levels of lead and anti-corrosive toxic chemicals is unreasonable because such activity severely limits the Plaintiff Class Representatives' and Class Members' use and enjoyment of their property in manners suitable to the location.

163.   The Defendants' conduct has caused Plaintiff Class Representatives' and Class Members' significant annoyance, including disruption of water supplies, increased angst and anxiety, and inconvenience of requiring the installation of home filtration systems.

164.   The Defendants' release of lead and toxic chemicals from Benton Harbor holds little social value or utility to this community.

165.   As a direct and proximate result of Defendants' creation of a nuisance, Plaintiff Class Representatives and Class Members, as owners or occupants of residential real property, have suffered special injury and special damages and losses and non-economic and economic damages stated above, as well as the present harm of the need to incur the cost of diagnostic testing for the early detection of illness, disease, or disease process caused by Defendants' substantial and significant interference with their properties.   Accordingly, Defendants are liable for compensatory and punitive damages to Plaintiff and Class Members.

## RELIEF REQUESTED

Accordingly, Plaintiff Class Representatives and Plaintiff Class members request the following relief from the court:

a.  An Order certifying this case as a class action;

b.  An Order declaring the conduct of Defendants unconstitutional;

c.  An Order of equitable relief to remediate the harm caused by

  (a)  repairs and compensation of property damage;
  (b)  an immediate abatement of the lead service with replacement lines;
  (c)  a water supply delivered to each home of adequate water until new service lines are replaced;
  (d)  establishment of a medical monitoring process, including funds and testing;
  (e)  appointing a monitor to oversee the water operations of Benton Harbor for all human purposes, for a period of time deemed appropriate by the court;
  (f)  A Community Center and coordinator for children and adults with learning impairments, and/or other needs, which require expertise;
  (g)  ongoing water lead testing for each home; and
  (f)  testing blood lead levels for all in the City of Benton Harbor.

d.  An Order for an award of compensatory damages, economic and non-economic;

e.  An Order for an award of punitive damages;

f.  An Order for an award of actual reasonable attorney fees and litigation expenses;

g.  An Order for all such other relief as the court deems equitable.

Respectfully submitted,

EDWARDS & JENNINGS, P.C.


By:   /s/ Alice B. Jennings

Alice B. Jennings (P29064)
Attorney for Plaintiff
ajennings@edwardsjennings.com


By:   /s/ Carl R. Edwards
Carl R. Edwards (P24952)
Attorney for Plaintiff
cedwards@edwardsjennings.com


MORGAN and MORGAN

By:   /s/ Kevin S. Hannon
Kevin S. Hannon
Attorney for Plaintiffs
khannon@hannonlaw.com


Dated: November 10, 2021

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DORETHA BRAZIEL, individually and as
Next Friend for minors, RONESHA
BRAZIEL-minor 1, DEANA BRAZIEL-
minor 2, et. al.,

          Plaintiffs,

v.                                 Case No.:

GOVERNOR GRETCHEN WHITMER,     Hon.
Individually and in her official capacity;
STATE OF MICHIGAN - ENVIRONMENT,
GREAT LAKES & ENERGY; et. al.

          Defendants.

_____/

| | |
|---|---|
| Alice B. Jennings (P29064) | Kevin S. Hannon |
| Carl R. Edwards (P24952) | Attorney for Plaintiffs |
| **EDWARDS & JENNINGS, P.C.** | **MORGAN and MORGAN** |
| Attorneys for Plaintiffs | khannon@hannonlaw.com |
| ajennings@edwardjennings.com | |
| cedwards@edwardsjennings.com | |

_____/

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury as to all those issues triable as of right.

                          Respectfully submitted,

                          **EDWARDS & JENNINGS, P.C.**

                          /s/ Alice B. Jennings
                          Alice B. Jennings (P29064)
                          Attorney for Plaintiffs
                          ajennings@edwardsjennings.com

By:   /s/ Carl R. Edwards
        Carl R. Edwards (P24952)
        Attorney for Plaintiff
        cedwards@edwardsjennings.com


MORGAN and MORGAN

By:   /s/ Kevin S. Hannon
        Kevin S. Hannon
        Attorney for Plaintiffs
        khannon@hannonlaw.com


Dated: November 10, 2021