UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARETHA BRAZIEL, et al,

    Plaintiffs,

v.

GOVERNOR GRETCHEN WHITMER, et al,

    Defendants.

Case No. 21-cv-00960-HYJ-PJG

Hon. Hala Y. Jarbou

Magistrate Judge Phillip J. Green

/

**DEFENDANTS THE CITY OF BENTON HARBOR, MARCUS MUHAMMAD,
MICHAEL O'MALLEY, AND DARWIN WATSON'S
<u>RESPONSE TO OBJECTIONS TO REPORT AND RECOMMENDATION</u>**

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ iii

I. Introduction ........................................................................................................... 1

II. Standard of Review ............................................................................................... 1

III. Argument .............................................................................................................. 2

    A. Claims that officials have violated a substantive due process right to bodily integrity must, as Magistrate Judge Green recognized, do more than allege negligent behavior. ........................................................................................... 2

        1. Plaintiffs have no factual allegations about actions taken by either Darwin Watson or Ellis Mitchell. ................................................................................ 3

        2. The allegations about Mr. O'Malley are only slightly less conclusory. ......... 5

        3. The allegations related to Mr. Muhammad similarly fail to state a due process claim. ............................................................................................................ 7

    B. Plaintiffs attempt to draw parallels between these conclusory allegations and those the *In re Flint Water Cases*, but those cases included specific, concrete allegations of misconduct. ................................................................................................ 7

    C. Magistrate Judge Green correctly applied the Rule 12(b)(6) standard in determining that Plaintiffs had not pled facts sufficient to sustain their claim for relief. .................................................................................................................. 9

IV. Conclusion .......................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*Albrecht v. Treon*,
 617 F.3d 890 (6th Cir. 2010) .................................................................................. 2

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 554 (2007) ................................................................................................ 2

*Carthan v. Snyder*, E.D. Mich. Case No. 5:16-cv-10444, ECF No. 620-3 ..................... 8

*Doe v. Jackson Local Sch. Dist. Bd. of Educ.*,
 954 F.3d 925 (6th Cir. 2020) .................................................................................. 3

*Guertin v. Michigan*,
 912 F.3d 907 (6th Cir. 2019) .......................................................................... 3, 7, 9

*Guertin v. Michigan*,
 924 F.3d 309 (6th Cir. 2019) .................................................................................. 9

*Jones v. City of Cincinnati*,
 521 F.3d 555 (6th Cir. 2008) .................................................................................. 1

*Kottmyer v. Maas*,
 436 F.3d 684 (6th Cir. 2006) .................................................................................. 2

*League of United Latin Am. Citizens v. Bredesen*,
 500 F.3d 523 (6th Cir. 2007) ............................................................................ 2, 10

*Martin v. Bank of N.Y. Mellon Corp.*,
 No. 15-cv-10330; 2015 U.S. Dist. LEXIS 157050 (E.D. Mich. Nov. 20, 2015) .................... 4

*Range v. Douglas*,
 763 F.3d 573 (6th Cir. 2014) .................................................................................. 3

*Robertson v. Lucas*,
 753 F.3d 606 (6th Cir. 2014) .................................................................................. 2

*Roller v. Brennan*,
 No. 2:17-cv-241; 2018 U.S. Dist. LEXIS 158043 (S.D. Ohio Sep. 17, 2018) ................... 4

*Waid v. Earley (In re Flint Water Cases)*,
 960 F.3d 303 (6th Cir. 2020) .............................................................................. 7, 8

**STATUTES**

4875-2103-1531.v3

28 U.S.C.(b)(1)
  § 636(b)(1) .................................................................................................................. 1

**FEDERAL RULES**

Federal Rules of Civil Procedure
  Rule 72(b)(3) ............................................................................................................... 1

4875-2103-1531.v3

## I. INTRODUCTION

The City of Benton Harbor (the "City") employees, including Mayor Marcus Muhammad, former City Manager Darwin Watson, current City Manager Ellis Mitchell, and former Water Plant Manager Michael O'Malley (the "City Officials" and, together with the City, the "City Defendants"), have spent years working to remediate findings that portions of its drinking water supply had elevated levels of lead—and despite numerous obstacles, they have successfully done so. Since discovering lead in antiquated service lines, the City has successfully replaced 99.5% of its lead based service pipes and in just a period of a few short years. Identifying and solving a problem is not a constitutional tort. It is good government. Magistrate Judge Green's Report and Recommendation granting the City Defendant's Motion to Dismiss properly recognized that Plaintiffs have not plausibly alleged that the City Defendants caused or even exacerbated the City's elevated lead levels, and that they cannot be held liable for any violation of a constitutional right. The Report and Recommendation should therefore be accepted in its entirety.

## II. STANDARD OF REVIEW

Objections to the report of a magistrate judge on a dispositive motion are reviewed *de novo* by the district court, which "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also*, Fed. R. Civ. P. 72(b)(3); L. Civ. R. 72.3(b). The present objections challenge a recommendation on the City Defendant's Motion to Dismiss under Rule 12(b)(6), determining that the Plaintiffs failed to state a claim upon which relief could be granted. Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). In evaluating the motion, courts must "accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that

1

would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (*citing Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Although this standard is liberal, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of their grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

### III. ARGUMENT

#### A. Claims that officials have violated a substantive due process right to bodily integrity must, as Magistrate Judge Green recognized, do more than allege negligent behavior.

Magistrate Judge Green's Report and Recommendation correctly held that the Plaintiffs failed to state a claim under which relief could be granted as against the City Defendants,[1] because the Plaintiffs did not allege the existence of "conscience shocking" behavior rising to the level of a constitutional substantive due process[2] violation. As the Report and Recommendation

---

[1] The Report and Recommendation also held that the Plaintiffs could not sustain a *Monell* claim against the City without an underlying constitutional violation. ECF No. 173, PageID.4560. Plaintiffs do not address this holding, but this holding is also correct. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation."). However, even if this Court disagrees with the Report and Recommendation as to the existence of a constitutional violation, it correctly held that Plaintiffs failed to plead the existence of any policy, practice, or custom that caused the alleged constitutional violation. *See* ECF No. 173, PageID.4560; *see also*, City Defendant's Motion to Dismiss, ECF No. 148, PageID.4061–64.

[2] Further, Magistrate Judge Green found that "[g]overnmental infliction of lead-contamination on an individual is unquestionably a harm striking at the core of that person's bodily integrity." ECF No.173, PageID.4568 (citations omitted). The City Defendants disagree. First, substantive due process protections is neither "deeply rooted in [our] history and tradition" nor essential to our Nation's "scheme of ordered liberty." *See e.g., Dobbs v. Jackson Women's Health Org.*, 597 U.S. _, slip op. at 11 (2022). 11–12. Second, even if there is such a constitutional right, Plaintiffs have failed to plead that the right has been violated. ECF No. 148, PageID.4042. For the purposes of this brief, City Defendants address solely the objections to the findings regarding the lack of conscience-shocking behavior.

explained, in order to show the existence of such a violation, Plaintiffs must show both that they were "depriv[ed] of a constitutionally protected liberty interest" and that "the government's discretionary conduct that deprived that interest was constitutionally repugnant." ECF No. 173, PageID.4547 (citing *Guertin v. Michigan*, 912 F.3d 907, 922 (6th Cir. 2019)).

As the Sixth Circuit has explained, "[c]onduct shocks the conscience if it violates the decencies of civilized conduct. . . . Such conduct includes actions so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014) (internal citations omitted). In order to adequately state a substantive due process claim, Plaintiffs must set forth specific allegations as to *each* defendant. "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020) (citations omitted). Plaintiffs have utterly failed to make specific allegations as to each defendant. And, as the Report and Recommendation found, Plaintiffs' lack any allegations as to how each City Defendant purportedly acted in such a "brutal and offensive" way as to offend Plaintiffs' substantive due process rights. Rather than present concrete and specific examples, Plaintiffs rely on "talismanic invocations of liability" that are "manifestly insufficient" to state a claim for relief. *See* ECF No. 173, PageID.4549.

### 1. Plaintiffs have no factual allegations about actions taken by either Darwin Watson or Ellis Mitchell.

As Magistrate Judge Green found, "[t]here is a particular dearth of specific allegations in the amended complaint against the former and current city managers regarding any involvement they may have had in the contamination of the Benton Harbor water system." Mr. Mitchell, the current city manager, and Mr. Watson, who previously served as city manager, are mentioned only in boilerplate claims that state legal conclusions in the guise of factual allegations. As to

3

Mr. Watson, he is mentioned by name only in four total paragraphs in the complaint. *See* ECF No. 82, PageID.1122 (¶ 28), 1168 (¶ 160), 1169 (¶ 162), 1170 (¶ 169). None of these paragraphs actually identify any action taken by Mr. Watson, or action he failed to take, that in any way caused or contributed to the alleged constitutional violations. Indeed, the latter three paragraphs are general statements of the elements of each cause of action, and are included in the statements of each claim brought. The complaint says only generally[3] that Mr. Watson "failed to adequately advise the public, creating, escalating, and prolonging the dangers of lead poisoning and other health hazards" or that "he did not follow the notice and public education required by State and federal Safe Drinking Water laws." *Id.* The allegations related to Mr. Mitchell are, with one exception, *identical*, word for word. *See id.* at PageID.1123 (¶ 28), 1168 (¶ 160), 1169 (¶ 162), 1170 (¶ 169). Mr. Mitchell is additionally listed as the recipient of a 2021 water system inspection report issued by the EPA. *Id.* at PageID.1141. However, again, the allegations related to this report say nothing about any specific actions taken by Mr. Mitchell (or that he failed to take).

Without more, these allegations are insufficient to support a claim for relief. *See Roller v. Brennan*, No. 2:17-cv-241, 2018 U.S. Dist. LEXIS 158043, at *18 (S.D. Ohio Sep. 17, 2018) (dismissing a claim where the plaintiff offered "bare recitations" of statutory claim elements and mere "conclusory statements regarding Defendants' state of mind, calling their conduct 'willful, malicious, spiteful, with ill will, and/or a reckless disregard for [Plaintiff's] rights'"); *Martin v. Bank of N.Y. Mellon Corp.*, No. 15-cv-10330, 2015 U.S. Dist. LEXIS 157050, at *5 (E.D. Mich.

---

[3] The allegations against Mr. Watson are so sparse that Plaintiffs' objections to the R&R actually seek to incorporate allegations from the complaint filed in an entirely different case, *Mitchell, et al. v. City of Benton Harbor, et al.*, No. 1:22-cv-00475, and references the R&R issued therein.

Nov. 20, 2015) (dismissing a claim where the plaintiff alleged that "[d]efendants failed to properly follow the requirements of the foreclosure process set forth in [Mich. Comp. Laws §] 600.3201 et seq" but "d[id] not allege how defendants improperly calculated that amount, how the amount should have been calculated, or even what the proper amount should have been."). The Report and Recommendation should therefore be adopted in its entirety as to Mr. Mitchell and Mr. Watson.

### 2. The allegations about Mr. O'Malley are only slightly less conclusory.

As for Mr. O'Malley, Plaintiffs' allegations fare no better. Mr. O'Malley was the director for the City water plant until 2020. ECF No. 82, PageID.1123. Most of the allegations about Mr. O'Malley are similarly general legal statements rather than factual allegations. *See id.* (stating that "Defendant O'Malley's actions caused, maintained, and covered up the Benton Harbor water crisis. Additionally, Defendant O'Malley failed to follow the notice and public education requirements of the state and federal Safe Drinking Water Acts. . . . Defendant O'Malley's actions violated each Plaintiffs bodily integrity and property interest under the Fourteenth Amendment."). The Plaintiffs add two additional statements as the entire basis for their allegations that Mr. O'Malley violated their constitutional right. First, they claim that he "admitted that lead may come from the city's main pipelines[,]" because he reported that "Lead in drinking water does not come from Lake Michigan; or the Water Treatment Plant in Jean Klock Park; or *(perhaps to a very small degree)* the water in the mains that move the water all around the City." *Id.* at PageID.1131. He further stated that the lead exceedance levels were likely driven primarily by the individual lead service lines connecting private homes to the public water mains and by plumbing fixtures. *Id.* This report was published in 2018, at most, 2 months

---

ECF No. 174, PageID.4586. But the Plaintiffs cannot cure the defects in their own complaint by

after the first lead exceedance levels were identified. *See* ECF No. 71-5, pageID.930. It is unclear what, exactly, Plaintiffs take issue with in this statement—Plaintiffs agree that the lead exceedance levels were driven by lead in service lines. *See* ECF No. 82, PageId.1133. Indeed, replacement of the private service lines in the City resulted in reductions in lead exceedance levels, and the City is now in compliance with state and federal lead level regulations. ECF No. 148-4, 165-3. The fact that, less than 2 months after lead exceedance levels were first identified, a city official lacked 100% certainty in the cause of the exceedances and accurately represented the potential sources does not demonstrate an attempt to "cover up," "contribute to," or "prolong[]" the "water crisis." *See* ECF No. 174, PageID.4594–95. It *certainly* does not amount to conscience-shocking behavior.

Secondly, Plaintiffs allege that Mr. O'Malley represented that, after flushing water from the tap, city water could safely be drunk. ECF No. 82, PageID.1153. This statement also occurred only a few months after the first lead exceedance levels, again, as recommendations were being developed and the City government was exploring causes and treatments for the lead level exceedances. *See id.* Further, this statement is consistent with EPA recommendations to reduce lead in drinking water.[4] Again, it is unclear how or why this statement caused a deprivation of Plaintiffs' constitutional rights. As the Report and Recommendation states, these allegations are insufficient to state a due process claim.

---

incorporating allegations from a wholly separate action.

[4] *Basic Information about Lead in Drinking Water*, U.S. E.P.A., available at https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water#reducehome

### 3. The allegations related to Mr. Muhammad similarly fail to state a due process claim.

With regard to Mr. Muhammad, Plaintiffs again "advance a number of conclusory claims" that fail to identify any specific action or omission that violated Plaintiffs' constitutional rights. *See* ECF No. 173, PageID.4555. Like the other three individual City Defendants, Mr. Muhammad is named in a few general paragraphs that state the elements of the causes of actions brought, including that he "approved of, and participated in," decisions that caused the lead level exceedances, that he failed to notify and warn residents, and failed to follow public education and notice requirements. ECF No. 82, PageID.1122; *see also, id.* at PageID.1168–70. The *only* specific factual allegation relates to a claim that one named Plaintiff asked for water testing in or around 2020, but that Mr. Muhammad failed to get back to her. This singular alleged failure does not, as the Report and Recommendation recognizes, "constitute[] conscience shocking conduct."

### B. Plaintiffs attempt to draw parallels between these conclusory allegations and those the *In re Flint Water Cases*, but those cases included specific, concrete allegations of misconduct.

The Plaintiffs' allegations in the present litigation are substantially different from those presented in *Guertin*, 912 F.3d 907, and *Waid v. Earley (In re Flint Water Cases)*, 960 F.3d 303, 310 (6th Cir. 2020). Plaintiffs' chart comparing conclusory legal allegations does nothing to prove sufficient similarities to justify a different ruling than the one reached in the Report and Recommendation—instead, it just re-states the same generalities that fail to meet basic pleading requirements.

Further, actual comparison to the complaints at issue in *Guertin* and *Earley* demonstrate exactly how superficial the present allegations really are. For example, Mr. O'Malley's actions are analogized to those of MDEQ Water Treatment Specialist Patrick Cook and Flint Utilities Administrator Daugherty Johnson. ECF No. 174, PageID.4594–96. But Mr. Johnson was alleged

to have pressured the City of Flint's water treatment plant's laboratory and water quality supervisor to begin a switch to the Flint River, despite the supervisor's belief that the treatment plant was not ready to begin operations. *Carthan v. Snyder*, E.D. Mich. Case 5:16-cv-10444-JEL-EAS, ECF No. 620-3, PageID.17850; *see also*, *Earley*, 960 F.3d at 326. He was also alleged to have disregarded FOIA requests about Flint water testing locations and results for at least a month. *Id.* at PageID.17887. Meanwhile, Mr. Cook was alleged to have disregarded a report warning that Flint water treatment plans were likely to increase lead levels, and to have provided false information to the EPA about the necessity of corrosion control measures and Flint lead levels. *Id.* at PageID.17886, 17890; *see also*, *Earley*, 960 F.3d at 329. These sorts of allegations are far more concrete than those found in the present case, and demonstrate the dissimilarity between the conduct alleged in the Flint Water Cases and the present litigation. Indeed, even in the Flint Water Cases, allegations of this sort were seen by some Sixth Circuit judges as failing to "meet the Supreme Court;s high bar for prying away an officer's qualified immunity—even at the early motion-to-dismiss stage." *Earley*, 960 F.3d at 335 (Murphy, dissenting in part).

Plaintiffs also focus on a distinction between passive and active behavior—what they refer to as "flipping the switch"—to critique the Report and Recommendation. But this mischaracterizes Magistrate Judge Green's findings. The primary substantive finding in the Report and Recommendation examines the *specific* allegations as to *each* defendant, ultimately finding that the Plaintiffs do not set forth sufficient allegations to state a claim against each. These findings did not turn exclusively on a question of whether any defendant "caused" the elevated lead levels, but instead, turned primarily on Plaintiffs' reliance on conclusory legal statements in lieu of factual allegations specific to each defendant. Plaintiffs' arguments about

whether or not "switch-flipping" behavior is a requirement of the "conscience-shocking" evaluation is a red herring.

Plaintiffs would also have this Court believe that the allegations considered in the Flint Water Cases presented behavior that fell easily into the "conscience-shocking" realm. *See* ECF No. 174, PageID.4592. But to the contrary, the Flint allegations were very much a close case, generating significant disagreement between Sixth Circuit judges and panels, and a number of concurrences and dissents. Even the *Guertin* majority acknowledged that it dealt not with the extremes of constitutionally unjustifiable behavior, but a "middle state of culpability. 912 F.3d at 923. The dissent, meanwhile, saw those claims as a "failure to protect from foreseeable harm" theory [that] sound[ed] in classic negligence." *Id.* at 947 (McKeague, concurring in part and dissenting in part); *see also, Guertin v. Michigan*, 924 F.3d 309, 316 (6th Cir. 2019) (dissenting opinion that the claims "indisputably sound[ed] in negligence . . . insofar as Defendants failed to protect Plaintiffs from a foreseeable risk of harm . . . ." ) (Kethledge, dissenting from the denial of rehearing en banc). As Chief Judge Sutton made clear, allegations that local offices "bungled their response to a water crisis and in the process inadvertently polluted the water supply" are insufficient to state a constitutional claim, and when negligence is all that is alleged, the "litigation needs to end—promptly." *Id.* at 311 (Sutton, concurring). The same is true here.

### C. Magistrate Judge Green correctly applied the Rule 12(b)(6) standard in determining that Plaintiffs had not pled facts sufficient to sustain their claim for relief.

Magistrate Judge Green correctly applied the appropriate Rule 12(b)(6) standard of review by taking all factual allegations as true, drawing all reasonable inference in favor of Plaintiffs, and then determining whether Plaintiffs stated a cognizable claim. *See* ECF No. 173, PageID.4540. Plaintiffs complain, though, that Magistrate Judge Green "manufactures a

9

heightened pleading standard" by requiring Plaintiffs to "allege all facts necessary to prove" their alleged constitutional claims. But Plaintiffs would twist the rule that all "well-pled factual allegations be accepted as true" into one where a court cannot apply the facts as pled to the law. They suppose that this is particularly true in substantive due process claims evaluating whether challenged conduct shocks the conscience. Taken to its natural conclusion, Plaintiffs' objections suggest that no motion to dismiss can ever be granted on the types of claims raised in the complaint. But no such rule exists. Magistrate Judge Green did not require detailed, specific descriptions sufficient to prove the claims brought—his Report and Recommendation merely requires that there be *some* factual basis for the serious allegations levied against the City Defendants.[5] ECF No. 173, PageID.4548–49. Once Plaintiffs' claims are taken as true, and all inferences favorable to Plaintiffs are drawn, they still have not set forth a legally sufficient claim for relief. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

Plaintiffs also suggest that it was improper to rely on the "extrinsic evidence" submitted by the State Defendants. ECF No. 174, PageID.4584. However, they have not actually identified any portion of the factual background from the Report and Recommendation that they contest is inaccurate or inconsistent with their complaint. Further, the Report and Recommendation cites specifically to factual allegations in the complaint—or rather, lack thereof—for its evaluation of the claims brought against each City Defendant. This complaint about the basis for the factual

---

[5] Implied in Plaintiffs' objections is the suggestion that Plaintiffs should be allowed to amend, if the complaint lacks sufficient factual allegations to sustain their claim. ECF No. 174, PageID.4583. But Plaintiffs have already done so *twice*. Plaintiffs have already had a fair chance to state a cognizable claim against the City Defendants, and have failed to do so.

background is nothing but white noise, and is not a basis for rejecting the Report and Recommendation, much less for denying the City Defendants' motion to dismiss.

## IV. CONCLUSION

For these reasons, the City Defendants respectfully request this Court adopt the findings of Magistrate Judge Green's Report and Recommendation in its entirety.

                                            Respectfully submitted,

                                            BODMAN PLC

                                            By: *Thomas J. Rheaume, Jr.*
                                                Thomas J. Rheaume, Jr. (P74422)
                                                Alexandra C. Markel (P81705)
                                                6th Floor at Ford Field
                                                1901 St. Antoine Street
                                                Detroit, Michigan 48226
                                                313-259-7777
                                                trheaume@bodmanlaw.com
                                                amarkel@bodmanlaw.com
                                                Attorneys for City Defendants

June 29, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2023, the foregoing document was filed with the Clerk of the Court via the Court's e-filing system which will give notice of such filing to all counsel of record.

        BODMAN PLC

        By: *Thomas J. Rheaume, Jr.*
            Thomas J. Rheaume, Jr. (P74422)
            Alexandra C. Markel (P81705)
            trheaume@bodmanlaw.com
            amarkel@bodmanlaw.com
            Attorneys for City Defendants

## CERTIFICATE OF COMPLIANCE

The City Defendants certify that this Response to Objections to Report and Recommendation is in compliance with LR 7.2(c). Microsoft Word's word count function reports a total word count of 3,690, as defined by LR 7.2(b)(i).

        Respectfully submitted,

        BODMAN PLC

        By: *Thomas J. Rheaume, Jr.*
            Thomas J. Rheaume, Jr. (P74422)
            Alexandra C. Markel (P81705)
            6th Floor at Ford Field
            1901 St. Antoine Street
            Detroit, Michigan  48226
            313-259-7777
            trheaume@bodmanlaw.com
            amarkel@bodmanlaw.com
            Attorneys for City Defendants

June 29, 2023